IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHAD ALAN CAPPIELLO, #2262766 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  4:19cv264 |
| | § | *consolidated with* 4:22cv78 |
| DIRECTOR, TDCJ-CID | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

*Pro Se* Petitioner Chad Alan Cappiello, an inmate confined in the Texas prison system,

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred

to United States Magistrate Judge Christine A. Nowak for findings of fact, conclusions of law, and

recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended

Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate

Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his two Hopkins County convictions. In cause number 1725811,

Petitioner was charged by indictment with theft of property in the amount of $1,500.00 or more

but less than $20,000.00. (Dkt. # 40-19, p. 6). In cause number 1725812, Petitioner was charged

by indictment with theft of property in the amount of $1,500.00 or more but less than $20,000.00.

(Dkt. # 40-23, p. 6). The jury found him guilty of both offenses and sentenced him to two years'

imprisonment on each offense, with the sentences to run concurrently. (Dkt. # 40-6, pp. 130-31;

Dkt. # 40-20, pp. 24-25; Dkt. # 40-24, pp. 81-82).

Petitioner appealed his convictions. On November 30, 2017, the Texas Sixth Court of

Appeals affirmed the judgments as modified to reflect that Section 31.03(e)(4)(A) of the Texas

Penal Code is the correct statute of offense. *Cappiello v. State*, No. 06-17-00109-CR, 2017 WL

5894319 (Tex. App. Nov. 30, 2017); *Cappiello v. State*, No. 06-17-00110-CR, 2017 WL 5894323 (Tex. App. Nov. 30, 2017). The Texas Court of Criminal Appeals ("TCCA") refused his petitions for discretionary review on August 22, 2018. *Cappiello v. State*, Nos. PD-0196-18, PD-0197-18 (Tex. Crim. App. 2018).

Petitioner filed two applications for state habeas corpus relief on November 21, 2018. (Dkt. # 40-20, pp. 42-65; Dkt. # 40-21, pp. 1-7; Dkt. # 40-24, pp. 28-57). The state habeas court made no written findings and transmitted the application to the TCCA.[1] On February 20, 2019, the TCCA denied the applications without written order. (Dkt. # 40-17; Dkt. # 40-22).

Petitioner filed the instant petition on April 3, 2019.[2] (Dkt. # 1). Petitioner asserts the following claims for relief:

1. The evidence is insufficient to support his conviction for theft in cause number 1725811;

2. The evidence is insufficient to support his conviction for theft in cause number 1725812;

3. The evidence is insufficient to support his convictions for theft because there is no evidence of deception;

4. The court of appeals erroneously affirmed the trial court's judgment in admitting extraneous offense evidence;

---

[1] Pursuant to the Texas Code of Criminal Procedure:

> Within 20 days of the expiration of the time in which the state is allowed to answer, it shall be the duty of the convicting court to decide whether there are controverted, previously unresolved facts material to the legality of the applicant's confinement. Confinement means confinement for any offense or any collateral consequence resulting from the conviction that is the basis of the instant habeas corpus. If the convicting court decides that there are no such issues, the clerk shall immediately transmit to the Court of Criminal Appeals a copy of the application, any answers filed, and a certificate reciting the date upon which that finding was made. Failure of the court to act within the allowed 20 days shall constitute such a finding.

Tex. Code Crim. Pro. Ann. art. 11.07 § 3(c).

[2] On May 21, 2019, Petitioner discharged his two-year sentences. (Dkt. # 38-1).

5. The court of appeals erroneously affirmed the trial court's judgment in admitting extraneous offense evidence because it misconstrued the "rule of admission" in a theft case;

6. The jury charge was incorrect;

7. The evidence is insufficient to support his convictions for theft because the appellate court did not consider all the terms of the contract;

8. The evidence is insufficient to support his convictions for theft because the appellate court did not consider all the evidence presented at trial;

9. The prosecution made misleading and inflammatory statements to the jury;

10. He was denied effective assistance of trial counsel because his trial counsel:

    a. Failed to present the contract as a defense;

    b. Failed to file a motion to suppress extraneous offenses and prepare for the extraneous offense hearing;

    c. Failed to object to only one day prior notice before a pretrial hearing;

    d. Failed to object to a hearing being three days before trial instead of the required ten;

    e. Failed to require unanimous jury verdict on the element of deception;

    f. Failed to personally investigate because he did not interview the State's witnesses and did not visit the house to see if construction was ongoing;

    g. Failed to file a motion for change of venue;

    h. Failed to obtain rulings on filed motions;

    i. Failed to reurge objections to the admittance of extraneous offenses;

    j. Failed to raise a *Batson* challenge;

    k. Failed to request additional peremptory[3] strikes;

---

[3] The Court understand Petitioner means "peremptory" strikes when he refers to "peremtive" strikes. (Dkt. # 1, p. 24).

l.   Failed to strike jurors for cause based on their relationship with authorities;

m.   Failed to preserve the record by objecting to missing jurors on the panel sheet;

n.   Failed to object to the prosecution's argument that he went by an alias;

o.   Failed to object to Wyatt testifying as an "expert" and to Peterson testifying about an internet posting;

p.   Failed to object to the State withholding evidence during trial regarding his creation of businesses and his attempts to contact the complainants;

q.   Failed to object to perjured testimony;

r.   Failed to educate the jury and negate one or more elements of the offense;

s.   Failed to object to improper jury argument;

t.   Failed to object to the erroneous jury charge that did not require the jury to be unanimous;

11. He was denied effective assistance of appellate counsel because his appellate counsel:

a.   Failed to raise the issue that he was convicted of two crimes arising from the same transaction;

b.   Failed to use case law provided to counsel by Petitioner to show that the extraneous offense evidence was improperly admitted because it was too old;

c.   Failed to raise the issue that he was convicted by an unconstitutionally selected petit jury;

d.   Failed to raise the issue that the contract was not upheld;

e.   Failed to raise the issue of perjured testimony;

f.   Failed to raise the issue of the erroneous jury charge;

g.   Failed to raise prosecutorial misconduct;

4

12. The evidence is insufficient to support his convictions for theft because there was no evidence that he intended to deceive the complainants when there was a contract;

13. The prosecution used false, perjured and misleading testimony; and

14. The prosecution withheld exculpatory evidence in violation of *Brady*.

(Dkt. # 1). The Director filed a response, asserting that the habeas petition is partially procedurally defaulted and wholly without merit. (Dkt. # 38). Petitioner filed a reply. (Dkt. # 43).

## II.  FACTUAL BACKGROUND

The Sixth Court of Appeals summarized the evidence at trial as follows:

### A. The Evidence at Trial

The evidence in this case established that Cappiello, who was doing business both as Extreme Exteriors and as Extreme Remodeling, engaged in a pattern of accepting money without completing work. Testimony from several witnesses established that they hired Cappiello to remodel their homes, that Cappiello cashed checks they had given him to complete various projects, but that he neither completed the work nor returned their money. Witnesses testified that Cappiello also used his birth name, "Chad Russell," when engaging in some of his business dealings and that his wife, Kristi Cappiello (who served as the secretary for the businesses), sometimes used the name of "Kristi Williamson" with customers and at other times denied that she was Cappiello's wife. Kristi further told customers that the company was based in Austin, Texas, and the address there that she often provided to the customers was that of an unoccupied building.

### 1. The Offenses at Issue

In this case, Cappiello was indicted based on his interactions with Julie Doss and her mother, Mary Doss. Julie testified that she located Extreme Remodeling online and submitted a request for an appointment to discuss the remodel of her kitchen. Cappiello arrived at Julie's home in a suit and handed her a business card which stated his name as "Chad Russell" and claimed that Extreme Remodeling had locations in Austin, Dallas, and Houston.[3] Julie testified that as a result of their conversation, she and Mary decided to hire Cappiello on May 14, 2015, and signed a contract to that effect.

[FN3] No address for the business was provided on the card.

5

The contract provided that Extreme Remodeling would, among other things, (1) replace the flooring in the kitchen, dining room, laundry room, and pantry with vinyl plank flooring, (2) retexture and paint the ceilings and walls in the kitchen and dining room, (3) install mosaic tile backsplash in the kitchen, (4) replace the existing kitchen cabinets with custom cabinets, (5) replace the kitchen countertops with granite, and (6) replace the sink and faucet in the kitchen. The contract listed a projected cost of $23,500.00.[4] On the day Julie and Mary signed the contract, they paid a "10% earnest money deposit" in the amount of $2,350.00,[5] with an understanding that an initial payment in the amount of fifty percent of the project costs was required to begin the project and the remaining payment was due on its completion. In the month of May, Cappiello returned to the home several times to entice Julie and Mary to consider several upgrades on materials. After they decided to select the upgrades, both the contract and the cost of the remodel was amended on June 4, 2015. On that date, Julie paid $13,575.00, representing the initial fifty-percent installment.

> [FN4] The contract represented that Extreme Remodeling's business address was 3131 McKinney Ave. # 600, Dallas, Texas 75204.

> [FN5] This check, which was cashed, formed the basis of the theft charge in our cause number 06-17-00109-CR.

Julie testified that Andrew Wyatt, a subcontractor for Cappiello, came to her home once after the contract was signed to take measurements. The contract referenced (but did not contain) a completion date for the project. According to Julie, Cappiello represented that the project would begin in four weeks, but later stated that it would commence on July 30. In preparation, Julie and Mary cleared the kitchen cabinets and waited for the remodel to begin. On July 28, Kristi told Julie that there was a family emergency that required the postponement of the project, but refused to provide a new start date for the project. No work was ever completed on the kitchen. Julie and Mary testified that they called Extreme Remodeling from August through December, that it often took Extreme Remodeling several days to return telephone calls, that the Cappiellos consistently delayed the start date of the project, and that no one would return their calls after the Christmas holiday.

Frustrated, Julie emailed Cappiello on January 12, 2016, to inform him that she had attempted to contact the company, had left several unanswered messages inquiring about the performance of the contract, and that the "receptionist ha[d] not done a very good job of even explaining why no one [would] call them." Because nothing had been done, Julie wrote, "I feel that you have taken advantage of us for over six months" and requested the immediate return of sums paid by her and Mary. Julie testified that when no one responded to her email, she contacted Wyatt, who had learned of and shared Cappiello's other identity after seeing his mug shot online.

Julie and Mary filed a police report against Cappiello for theft of their money. In August 2016, they finally received a response from Extreme Remodeling informing them that (1) pursuant to the terms of the contract, the deposit and initial payment were nonrefundable, and (2) they had breached the contract by cancelling it and informing third parties of the agreement in spite of the nondisclosure provision. Nevertheless, Cappiello agreed to perform the work on the condition that Julie and Mary would make the final payment up front and drop all charges against him and Extreme Remodeling.

As of the time of trial, no work had been done on the kitchen and, although the checks had been cashed, none of the money had been returned to Julie or Mary. Wyatt testified that because Cappiello had never once contacted him about the preparation of installation of the cabinets, he must have lied when telling Julie and Mary that the installation would begin on certain dates. Julie and Mary testified that they would never have hired Cappiello if they knew of his other identity and actual reputation.

### 2. Cappiello's Defense

The evidence at trial established that Cappiello was in jail from July 13, 2015, until December 2, 2015. From December 4-6, he was in the hospital after suffering a heart attack. Thus, Cappiello argued that he never intended to deceive Julie and Mary and that he simply could not complete the work due to his confinement and medical health. Maynor Hernandez, a subcontractor who worked for Cappiello (while Cappiello was using the name "Russell"), testified that he completed six jobs for Cappiello and was always paid.

Additionally, Cappiello sought to establish that he did not intend to deceive others by using the name Russell. Cappiello's ex-wife, Leslie Cappiello, was called by the State and testified that Chad Russell was Cappiello's actual "birth name." Cappiello's birth certificate, which was introduced into evidence, established that his name at birth was, in fact, Chadley Alan Russell. However, Leslie also testified that she had never known Cappiello to identify himself as "Russell" and that she had never known Williamson to be Kristi's last name, which she understood to also be Cappiello.

Texas Ranger Jason Bobo testified that Cappiello had two valid driver's licenses—one in the name of Chadley Alan Russell and another in the name of Chad Alan Cappiello. Both of the driver's licenses were tied to the same social security number.

To establish that Cappiello's dealings with Julie and Mary were not simply business dealings gone awry as a result of the "family emergency," the State offered extraneous-offense evidence.

### 3. Extraneous Offenses

Nash Peterson testified that he had known Cappiello since childhood and that Cappiello had never used the name Russell. Peterson worked for Cappiello in 2012 when he was doing business as Southland Exteriors. He testified, "I had sold jobs that were not done, and it seemed that they were dragging on. . . . [M]y bills were stacking up and I wasn't getting paid. . . . [S]o I just quit." Peterson testified that he became aware that the Cappiellos were receiving a lot of negative reviews online that could be located by typing "Cappiello" into an internet search toolbar. Peterson had replied to one of the reviews by attempting to clear his name so as not to be held responsible by those that had been "defrauded."

Wyatt testified that he met Cappiello when working together on a small project in Tyler, Texas, which was actually completed. After he was paid for the Tyler project, Wyatt agreed to take on four other projects for Cappiello, finished his portion of the work, asked for payment several times, but was never paid. According to Wyatt, Cappiello used the completed Tyler project as an exposition to build trust with him and with other victims, who toured the project site prior to hiring Cappiello to work on their homes. In hindsight, Wyatt testified that Cappiello's appearance and demeanor should have raised a red flag because, instead of "show[ing] up with tape measures, [and a] truck" to contracting jobs, Cappiello always arrived in a nice Cadillac SUV while wearing a three-piece suit, and seemed to only have vague knowledge for a contractor. Wyatt also said that Cappiello went only by Chad Russell and never revealed that Kristi was his wife.

Delia Snider testified that she hired Cappiello in January 2013 as a result of a "cold-call[]" by Kristi Williamson, who was advertising remodeling services provided by Extreme Exteriors. Snider testified that Kristi identified the company's general manager as Chad Russell, never revealed the name Cappiello, and claimed that the company was based out of Austin, Texas. Snider hired Cappiello after he appeared at her house in a suit, handed her a business card that failed to contain an address, and assured her that he was "an expert in build-outs." Snider entered into a written contract similar to the one signed by Julie and Mary and wrote an "earnest money check" for $1,500.00, which Cappiello deposited. In April, the contract was amended after Cappiello successfully upsold Snider on various upgrades and a second check for $21,730.00, written by Snider's parents, Jenaro and Margarita Soltis, was delivered by Snider. Snider testified that she instructed Cappiello that the work had to be completed by June 8, 2013, and that Cappiello represented that he would have no problems meeting that deadline.

Snider soon came to realize that Cappiello would be unable to meet the deadline. According to Snider, Cappiello first claimed that he had to obtain a building permit from the city of Temple, Texas, and later gave her the "runaround" after several weeks passed without any action. Snider said that Cappiello later claimed he was waiting on plans from engineers, but never revealed their identity despite Snider's repeated inquiries to get the information so she could contact the engineers to speed

things along. No work was ever completed on Snider's contract, and the money was never returned. Snider called the police after learning of Cappiello's other identity.

Evidence introduced at trial established that in 2015, Cappiello had pled no contest to theft of Soltis' money, in an amount of $20,000.00 or more, but less than $100,000.00, in Bell County, Texas. In 2016, Cappiello was placed on deferred adjudication community supervision in Bell County and was ordered to pay restitution to Soltis. Snider testified that she never would have hired Cappiello if she had known of his other identity and reputation.

Barbara Daniels also testified that she hired Extreme Exteriors to install a new roof as a result of an unsolicited telephone call from Kristi and a visit from Cappiello, who wore a suit, had manicured hands, and provided her with a business card that failed to include any last name. Daniels gave a deposit of $5,000.00 in January or February 2013 and received assurances that the project would begin in March. Cappiello never started the project. Daniels testified that she kept contacting Kristi, who simply claimed that Cappiello was busy. In May 2013, Daniels testified that she sent a letter to Extreme Exteriors demanding that they return her money, but that the letter, which was sent to the Austin address by certified mail, was returned as undeliverable. Daniels decided to drive to Austin to the address provided by Cappiello, discovered that the building was unoccupied, and called the police. At trial, Daniels also testified that her money was never returned.

Bobo investigated Daniels' complaint. He testified that the telephone number on the business card given to Daniels was "a Voice-over-IP . . . Internet phone," "that there were just a plethora of phone numbers that were associated to the business" that changed frequently, and that the address used by Cappiello's businesses was fictitious. Bobo also said that a search of the name Cappiello revealed "quite a bit" of negative information, while nothing of consequence appeared when using the name "Chad Russell" as the search object. Bobo testified that it took him approximately two years to locate Cappiello.

Etta Humphries also hired Cappiello after an unsolicited telephone call by Kristi in 2015. By that time, the company name had been changed to Extreme Remodeling. Humphries testified that Cappiello came out in a shirt and tie, wore a Rolex, and drove an SUV on one occasion and a pick-up truck on another. Cappiello identified himself as Chad Russell and produced a Texas driver's license bearing that name after Humphries asked for it. Humphries entered into a contract with Extreme Remodeling on January 15, 2015, and wrote a check for $13,375.00 on that day. In April, Cappiello sold Humphries on several upgrades and cashed additional checks written to cover the cost of the more expensive materials. In total, Humphries testified that she gave Cappiello approximately $36,000.00. This time, however, work began on the project in June, but Cappiello never appeared to supervise the subcontractors as he had promised. As a result, Humphries testified that her floor was never leveled, she never received the custom paint job as she was promised, workers left "footprints" on her porch and "overspray" on her tile floor, and she

was unsatisfied with the other work done. Humphries further testified that Cappiello said the workers leveled the floors with "mud," but that the floor was never flat. Nevertheless, she paid the full amount of the contract.

After hearing all of the evidence, the jury determined that Cappiello was guilty of theft as alleged in the State's indictment.

*Cappiello*, No. 06-17-00110-CR, 2017 WL 5894323, at **1-4.

### III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits

by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002); *Renico v. Lett*, 559 U.S. 766, 773 (2010). This Court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). The presumption of correctness applies to both implicit and explicit factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"In Texas writ jurisprudence, usually a denial of relief rather than a "dismissal" of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003*)*; *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than

the merits). Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Wesbrook v. Thaler*, 585 F.3d 245, 255 (5th Cir. 2009).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV. ANALYSIS

### A.    Exhaustion and Procedural Bar (Claims Six, Nine, Thirteen, and Fourteen)

The Director contends that Petitioner did not exhaust Claims Six (the jury charge was incorrect), Nine (the prosecution made misleading and inflammatory statements to the jury), Thirteen (the prosecution used false, perjured and misleading testimony), and Fourteen (the prosecution withheld exculpatory evidence in violation of *Brady*), and, as such, that they are procedurally barred.

A prisoner must exhaust all remedies available in state court before proceeding in federal court unless circumstances exist that render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. §§ 2254(b), (c). To exhaust properly, Petitioner must "fairly present" all his claims to the state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). This means that a petitioner must have informed the state court system of the same facts and legal theories upon

which he bases his assertions in his federal habeas petition. *Id.* at 276-77; *Dispensa v. Lynaugh*, 847 F.2d 211, 217-18 (5th Cir. 1988). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (internal quotation marks and citations omitted). In Texas, all claims must be presented to and ruled on by the Court of Criminal Appeals of Texas. *Richardson v. Procunier*, 762 F.2d 429, 430-31 (5th Cir. 1985); *Deters v. Collins*, 985 F.2d 789 (5th Cir. 1993). A Texas criminal defendant may exhaust remedies in two ways. A petitioner may file a direct appeal from a judgment of conviction followed, if necessary, by a petition for discretionary review in the TCCA. *See Hall v. Dir.*, TDCJ-CID, No. 4:18CV721, 2021 WL 5926017, at *2 (E.D. Tex. June 23, 2021), *report and recommendation adopted*, No. 4:18CV721, 2021 WL 5919029 (E.D. Tex. Dec. 15, 2021); *Mitchell v. Lumpkin*, No. CV H-20-3619, 2020 WL 6504624, at *2 (S.D. Tex. Nov. 5, 2020). Alternatively, a petitioner may file an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the TCCA once the trial court determines whether findings are necessary. *See* Tex. Code Crim. Proc. art. 11.07 § 3(c). "Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings." *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004).

A review of Petitioner's state proceedings reveals that the Director is correct that Petitioner did not fairly and properly present Claims Six, Nine, Thirteen, and Fourteen to the highest state court in a procedurally correct manner. Petitioner failed to properly raise these claims on either direct appeal and/or in his state habeas application.[4] Therefore, the TCCA has not had an

---

[4] In his reply, Petitioner asserts that the claims are exhausted because he raised them in his petition for discretionary review to the TCCA. (Dkt. # 43, pp. 2-4). Although Petitioner raised these claims in his redrawn petition for discretionary review (Dkt. # 39-11), he did not raise them in his brief (Dkt. # 39-7) on direct appeal to the intermediate appellate court. Given that the claims must have been raised to the TCCA in a procedurally proper manner, it will

opportunity to review Petitioners claims. Accordingly, Petitioner's Claims Six, Nine, Thirteen, and Fourteen are unexhausted.

If a petitioner has failed to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the claims are procedurally defaulted for purposes of federal habeas review. *Coleman*, 501 U.S. at 735, n.1; *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). If Petitioner presented Claims Six, Nine, Thirteen, and Fourteen at this time to the TCCA in another state writ application, the court would find them to be procedurally barred under the Texas abuse of the writ doctrine. Tex. Code Crim. Proc. Ann. art. 11.07 § 4; *Ex parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000). Thus, upon return to federal court, these claims would be barred from federal habeas review under the federal procedural default doctrine. *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (the Texas abuse of the writ doctrine is an "independent and adequate" state procedural bar for purposes of federal habeas review); *see also Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) ("Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review.") (quoting *Coleman v. Quaterman*, 456 F.3d 537, 542 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343 (2007))). Petitioner fails to overcome the

---

typically be the case that claims are unexhausted where they were presented "to a state's appellate courts for the first and only time in a petition for discretionary review." *Myers v. Collins*, 919 F.2d 1074, 1077 (5th Cir. 1990); *see also Flores v. Johnson*, 957 F. Supp. 893, 903 (W.D. Tex. 1997) ("The presentation of claims for the first time on discretionary review to the state's highest court does not constitute 'fair presentation' for exhaustion purposes."). The "exhaustion doctrine . . . requires that the chosen avenue of post-conviction relief, whether direct or collateral, be pursued in such a manner so as not to present claims to a state's appellate courts for the first and only time in a petition for discretionary review." *Myers*, 919 F.2d at 1077. "This is because doing so would typically leave the TCCA without an appellate decision to review." *De La Rosa v. Davis*, No. B-17-CV-00099, 2018 WL 9118927, at *8 (S.D. Tex. July 25, 2018), *report and recommendation adopted sub nom. La Rosa v. Davis*, No. 1:17-CV-0099, 2018 WL 4356748 (S.D. Tex. Sept. 12, 2018) (citing *Ex parte Queen*, 877 S.W.2d 752, 755 n. 4 (Tex. Crim. App. 1994)). The general exhaustion rule, therefore, may more specifically be described as providing that a Texas habeas petitioner has only satisfied the exhaustion requirement "if he presented his claim to the TCCA through a PDR [petition for discretionary review], if he also raised it on direct appeal to the intermediate court of appeals, or through a state application for writ of habeas corpus." *De La Rosa*, No. B-17-CV-00099, 2018 WL 9118927, at *8 (quoting *Garza v. Davis*, No. M-16-678, 2017 WL 3314282, at *2 (S.D. Tex. Jul. 18, 2017)). Because Petitioner did not raise Claims Six, Nine, Thirteen, and Fourteen to the TCCA in a procedurally proper manner, the claims are unexhausted.

procedural bar by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the Court's refusal to consider the claims. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *Fearance*, 56 F.3d at 642. Indeed, the Court has largely addressed, and rejected, the bulk of these issues below in the context of Petitioner's ineffective assistance of counsel claims. Petitioner's Claims Six, Nine, Thirteen, and Fourteen should therefore be dismissed.

## B.    Sufficiency of the Evidence (Claims One, Two, Three, Seven, Eight, and Twelve)

In Claims One, Two, Three, Seven, Eight, and Twelve, Petitioner contends that the evidence is legally insufficient to support his convictions. (Dkt. # 1, pp. 6, 11-12, 16-19).

Claims of "no evidence" or insufficient evidence to support a conviction are reviewed under the legal-sufficiency standard set out in *Jackson v. Virginia*. This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Norris v. Davis*, 826 F.3d 821, 833 (5th Cir. 2016). As a result, a federal habeas court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claims of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991). Consideration of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of witnesses, as those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985). All credibility choices and conflicting inferences are to be resolved in favor of the jury's verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *United States v. Nguyen*, 28 F.3d 477, 480

(5th Cir. 1994). A federal habeas court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Marler*, 777 F.2d at 1012; *Alexander v. McCotter*, 775 F.3d 595, 598 (5th Cir. 1985). Moreover, where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). As stated by the Supreme Court:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ___, 130 S. Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Petitioner raised a sufficiency of the evidence claim in both direct appeals. The Sixth Court of Appeals considered the issue in both appeals and found the evidence to be sufficient. Regarding the appeal in cause number 06-17-00110-CR (theft conviction in trial court cause number 1725811), the Sixth Court of Appeals wrote:

### B. Standard of Review

> In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.–Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917-18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13

(Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318-19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* "The 'law as authorized by the indictment' consists of the statutory elements of the offense and those elements as modified by the indictment." *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

The State's indictment alleged that Cappiello unlawfully appropriated "Check Number 1340" from Julie Doss, without her effective consent, by deception and with intent to deprive her of the property. The $13,575.00 check, which was affixed to the State's indictment, demonstrated that it was for a kitchen remodel.

In order to establish that Cappiello committed theft, the State had the burden to establish that (1) Cappiello, (2) with intent to deprive Julie of property, (3) unlawfully appropriated property (4) without Julie's effective consent. *See Ehrhardt v. State*, 334 S.W.3d 849, 852 (Tex. App.–Texarkana 2011, pet. ref'd). As set forth in *Taylor v. State*:

> Appropriate means "to acquire or otherwise exercise control over property other than real property." An intent to deprive an owner of his property means an intent "to withhold the property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." Appropriation is unlawful if it is without the owner's effective consent. Consent is not effective "if induced by deception." There are two statutory definitions of "deception" that are relevant on the facts presented here:
>
> • creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true; and
>
> • promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

*Taylor v. State*, 450 S.W.3d 528, 535-36 (Tex. Crim. App. 2014) (footnotes and citations omitted).

Here, Cappiello argues that the evidence was insufficient to demonstrate his intent "to appropriate property under a written contract by deception." "When the charged conduct concerns a matter for which the alleged victim and the accused had a contractual relationship, certain concerns arise." *Ehrhardt*, 334 S.W.3d at 853; *see Taylor*, 450 S.W.3d at 536. "Neither the mere failure to perform a contract nor the mere failure 'to return or pay back money after failing to perform a contract, for the performance of which the money was paid in advance,' are sufficient to establish guilt of theft." *Ehrhardt*, 334 S.W.3d at 853-54 (citation omitted) (quoting *Phares v. State*, 301 S.W.3d 348, 352 (Tex. App.–Beaumont 2009, pet. ref'd)). Thus, "[a] claim of theft made in connection with a contract . . . requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property." *Taylor*, 450 S.W.3d at 536 (quoting *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012)). There must be proof that "the defendant did not perform the contract and knew he was not entitled to the money, not merely that there is a dispute about the amount rightfully owed." *Ehrhardt*, 334 S.W.3d at 854 (quoting *Jacobs v. State*, 230 S.W.3d 225, 229 (Tex. App.–Houston [14th Dist.] 2006, no pet.)).

"[W]hat separates lawful acquisitive conduct from theft is knowledge of a crucial 'circumstance surrounding the conduct'—that the acquisition is 'without the owner's consent.'" *Ehrhardt*, 334 S.W.3d at 854 (quoting *McClain v. State*, 687 S.W.2d 350, 354 (Tex. Crim. App. 1985) (footnotes omitted)). "One method of establishing theft, in connection with a contractual dispute, is to establish the 'appellant had no intention of fulfilling his obligation under the agreement, and his promise to perform was 'merely a ruse to accomplish theft by deception.'" *Id.* (quoting *Jacobs*, 230 S.W.3d at 229).

"The requisite criminal intent can be formed after the formation of a contract." *Id.* at 856. However, "the State must prove that the appropriation was a result of a false pretext, or fraud" and that "the accused intended to deprive the owner of the property at the time the property was taken." *Taylor*, 450 S.W.3d at 536 (quoting *Wirth*, 361 S.W.3d at 697); *see Ehrhardt*, 334 S.W.3d at 856. Because "the deprivation of property cannot occur prior to the formation of the requisite intent[,] . . . if the intent to unlawfully deprive did not develop until after the formation of the contract, there must be an additional deprivation of property in connection with the recently formed criminal intent." *Ehrhardt*, 334 S.W.3d at 856. "In reviewing the sufficiency of the evidence, though, we should look at events occurring before, during, and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Taylor*, 450 S.W.3d at 536 (quoting *Wirth*, 361 S.W.3d at 697).

For example, while

a contractor accused of theft may not be convicted of that offense on the theory that he acquired a down payment from his customer by deception if there is no reason to doubt from the evidence that he had every expectation at the time that the money changed hands of fulfilling his contractual obligation; at the time of the down payment, the customer paid voluntarily, and the accused neither intended nor knew he would not perform.

. . . .

a contractor may yet be found guilty of theft if, at some point after the formation of the contract, he formulates the requisite intent to deprive and appropriates additional property by deception; that is, he induces his customer to make further payment on the contract while no longer intending to perform, or at least knowing that he will not.

*Id.* at 536-37. Additionally,

the fact that partial or even substantial work has been done on a contract will not invariably negate either the intent to deprive or the deception necessary to establish the unlawfulness of the initial appropriation. A contractor still may be convicted of theft under circumstances—to be sure, circumstances beyond the mere "failure to perform the promise in issue"—in which a rational fact-finder could readily conclude that he never intended, even at the outset, to perform fully or satisfactorily on the contract, and always harbored the requisite intent or knowledge to deceive his customer and thereby deprive him of the value of at least a substantial portion of the property thus unlawfully appropriated.

*Id.* at 537 (citations omitted).

Thus, we focus our inquiry not on whether Cappiello deprived Julie of property, but on whether Cappiello unlawfully deprived Julie of property without her effective consent, i.e., by deception. This requires us to determine whether Cappiello ever intended to perform the contract and whether his promise to perform was an illusion.

### C. Analysis

The jury heard that Cappiello never used the name "Russell" with his childhood friend or ex-wife. In 2012, Cappiello's business was called Southland Exteriors. After receiving several negative reviews online, which prompted Peterson to opine that people had been defrauded, Cappiello changed the name of the business to Extreme Exteriors, started using the name "Russell," and had Kristi make cold calls

to potential customers. According to Bobo, Cappiello provided others with telephone numbers that changed frequently and business addresses that were fictitious.

In 2013, the jury heard from Snider and Daniels that Cappiello had collected money from them, failed to perform any work, and never returned their money. They testified that they called Kristi in order to get answers, but that they were given the runaround. Several witnesses complained of unacceptable delays after Cappiello's successful attempts at selling them more expensive remodels. In 2015, Cappiello had changed the name of his business again to Extreme Remodeling and enlisted Wyatt to assist him in remodeling homes. Wyatt testified that Cappiello failed to pay him for several jobs and questioned his knowledge of home remodels. Later on, Cappiello pled no contest to theft in an amount of $20,000.00 or more, but less than $100,000.00, and was placed on deferred adjudication community supervision.

The jury heard of Julie and Mary's attempts to either get the work completed or get their money returned. Although evidence at trial established that Cappiello himself was out of commission from July through December, the evidence also demonstrated that Cappiello did not hire subcontractors to complete the necessary work as he had done for Humphries, failed to return any money, and in August 2016, sent a letter to Julie and Mary that accused them of breach of contract, demanded full payment under the contract for work not performed, and requested that they drop all charges against him.[6]

> [FN6] Cappiello contends that this case is similar to *Ehrhardt*, 334 S.W.3d at 856. Unlike in *Ehrhardt*, where a substantial amount of work was performed, Cappiello performed no work on Julie and Mary's contract. Thus, *Ehrhardt* is easily distinguished on the facts and a rational juror here could have determined that Cappiello had no intention of fulfilling his obligation under the agreement.

Cappiello argues that this case merely exhibits a failure to perform a contract. However, in light of the testimony of Snider and Daniels, who also paid large sums of money to Cappiello and could never get him to perform, the jury was free to determine that, (1) like with Snider and Daniels, Cappiello created a false impression by using the name Russell, changing his company's name, falsely representing that the company had offices in major Texas cities, and dressing in lavish clothing not characteristic of a contractor on the job in order to affect Julie and Mary's judgment with respect to the transaction, (2) like with Snider and Daniels, Cappiello promised performance likely to induce Julie and Mary to enter into the transaction when he did not intend to perform, (3) that Cappiello either intended to deprive Julie of the $13,575.00 obtained by her check (either when the contract was initially formed or when the check was later taken), and (4) that Cappiello knew he was not entitled to the money.

Cappiello's intent was an issue for the jury to resolve. Viewing the evidence in a light most favorable to the verdict, we conclude that a rational fact-finder could have concluded, beyond a reasonable doubt, that Cappiello's promise to perform was merely a ruse to accomplish theft by deception. Thus, the jury's finding that Cappiello had the requisite criminal intent is supported by legally sufficient evidence. We overrule Cappiello's first point of error.

*Cappiello*, No. 06-17-00110-CR, 2017 WL 5894323, at **4-8.

Regarding the appeal in cause number 06-17-00109-CR (the theft conviction in trial court cause number 1725812), the Sixth Court of Appeals wrote:

The standard of review for analyzing legal sufficiency claims and the facts pertaining to this case are set forth in detail in our opinion in cause number 06-17-00110-CR. Here, the State's indictment alleged that Cappiello unlawfully appropriated "Check Number 2376" from Mary and Julie Doss, without their effective consent, by deception and with intent to deprive them of the property. Thus, in order to establish that Cappiello committed theft, the State had the burden to establish that (1) Cappiello, (2) with intent to deprive the Dosses of property, (3) unlawfully appropriated property (4) without their effective consent. *See Ehrhardt v. State*, 334 S.W.3d 849, 852 (Tex. App.–Texarkana 2011, pet. ref'd). In cause number 06-17-00110-CR, we concluded that the evidence was legally sufficient to support the jury's verdict of Cappiello's guilt with respect to the $13,575.00 installment payment. Likewise, a review of the same evidence leads us to the conclusion that it was legally sufficient to support the jury's verdict of guilt in this case, which was based on the $2,350.00 payment. Accordingly, we overrule Cappiello's first point of error.

*Cappiello*, No. 06-17-00109-CR, 2017 WL 5894319, at *1. The TCCA refused Petitioner's petitions for discretionary review. Because TCCA did not issue opinions in refusing Petitioner's petitions for discretionary review, the Court may "look through" the TCCA's unexplained refusals to the last reasoned state court decisions, the Sixth Court of Appeals' decisions. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991); *see also Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014).

The Sixth Court of Appeals thoroughly reviewed the evidence, properly applied the *Jackson* standard, and found that the evidence was sufficient to support Petitioner's theft convictions. As described by the Sixth Court of Appeals, a rational jury could have drawn

inferences from the evidence which resulted in the conclusion that Petitioner never intended to perform the contract, and therefore, he unlawfully deprived the Dosses of their property through deception. Petitioner argues that the evidence is insufficient to support his convictions for theft by deception because there was a contract. The Sixth Court of Appeals rejected this argument after reviewing the applicable case law and evidence presented at trial. As the court noted, the fact that partial or even substantial work has been done on a contract will not necessarily negate either the intent to deprive or the deception necessary to establish the unlawfulness of the initial appropriation. Petitioner's claim that the evidence is insufficient to support his convictions is simply a disagreement with the fact-finder's resolution of conflicts in the evidence, and as such, is foreclosed by habeas review. Although the jury could have drawn inferences in Petitioner's favor and returned findings of not guilty, *Jackson* requires that inferences be drawn in favor of the verdict when a challenge to the sufficiency of the evidence is asserted. Furthermore, contrary to Petitioner's suggestion, for evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. As set forth in *Jackson*:

> Only under a theory that the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt could this petitioner's challenge be sustained. That theory the Court has rejected in the past. *Holland v. United States*, 348 U.S. 121, 140, 75 S. Ct. 127, 137, 99 L. Ed. 150. We decline to adopt it today. Under the standard established in this opinion as necessary to preserve the due process protection recognized in *Winship*, a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

*Jackson*, 443 U.S. at 326.

Affording due respect to the role of the jury and the state courts, the Court finds that the evidence at Petitioner's trial was not nearly sparse enough to sustain a due process challenge under *Jackson*. The evidence was sufficient to convict Petitioner of theft under Texas law. Above

all, Petitioner has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Williams*, 529 U.S. at 402-03; *Childress v. Johnson,* 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner has failed to show that the state court decisions were objectively unreasonable. *See Johnson*, 566 U.S. at 651. Accordingly, Petitioner's Claims One, Two, Three, Seven, Eight, and Twelve should be denied.

**C.**     **Extraneous Offense Evidence (Claims Four and Five)**

In Claims Four and Five, Petitioner contends that the Sixth Court of Appeals erroneously affirmed the trial court's judgment in admitting extraneous offense evidence. (Dkt. # 1, pp. 12-15).

The Sixth Court of Appeals considered and rejected Petitioner's claim that the trial court erred in admitting evidence of extraneous offenses to demonstrate Petitioner's intent to commit theft evidence as follows:

> Under Rule 404(b)(1) of the Texas Rules of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). Cappiello objected to the introduction of evidence related to his interactions with Snider, Daniels, Humphries, and Wyatt, and to Bobo's testimony regarding his internet searches on the grounds that such evidence violated Rule 404(b)(1).
>
> However, the trial court overruled Cappiello's objections after concluding it necessary to demonstrate intent under Rule 404(b)(2), which reads, as applicable, "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). Cappiello contends that the trial court's evidentiary ruling was erroneous. We disagree.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### B. Analysis

Rule 404(b)(2) allows for the presentation of extraneous offenses for the purposes of demonstrating intent, or the absence of mistake or accident.[7] Moreover, the theft statute contains another rule regarding extraneous offenses. *See Lopez v. State*, 316 S.W.3d 669, 678 (Tex. App.–Eastland 2010, no pet.). Section 31.03(c)(1) states that for purposes of establishing that appropriation of property is unlawful, "evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty." TEX. PENAL CODE ANN. § 31.03(c)(1).

> [FN7] The trial court provided the jury with Rule 404(b) limiting instructions.

"In a theft case arising from a construction contract, the issue of the defendant's intent at the time he received funds under the contract in consideration of his promise to perform future work will invariably be a contested issue at trial." *Lopez*, 316 S.W.3d at 678-79. Thus, extraneous offense evidence may be admitted under either Rule 404(b)(2) or Rule 31.03(c)(1). *Id.*

Cappiello's argument on appeal asserts (1) that the Snider and Daniels transactions were not recent transactions as required by Section 31.03(c)(1), (2) that the Humphries transaction "was completed satisfactorily" and "was no more than an opportunity for the witness to speak badly of" Cappiello, (3) that the Wyatt testimony regarding an extraneous act of not being paid was neither recent nor similar to the indicted offense, and (4) that Bobo's internet testimony "was truly a general slander" of Cappiello.

With respect to the Snider and Daniels transactions, although the term "recent" is not defined in Section 31.03(c)(1), Texas courts have held that events occurring a little more than two years prior to the offense in question fall within the category of recent events, whereas events occurring six years prior to the offense cannot be considered recent. *Cf. Benson v. State*, 240 S.W.3d 478, 484 (Tex. App.–Eastland

2007, pet. ref'd) *with Ballard v. State*, 945 S.W.2d 902, 905 (Tex. App.–Beaumont 1997, no pet.). Here, Cappiello took Snider's and Daniels' money deposits in January 2013 and Mary and Julie's money in May 2015. No bright line temporal rule has been set with respect to what constitutes a recent period under Section 31.03(c)(1). However, we need not decide whether the Snider and Daniels transactions qualify as evidence admissible under Section 31.03(c)(1), because even if they do not, such evidence was admissible under Rule 404(b) to demonstrate Cappiello's modus operandi, intent, and lack of mistake or accident. *See Lopez*, 316 S.W.3d at 678; *Hegar v. State*, 11 S.W.3d 290 (Tex. App.–Houston [1st Dist.] 1999, no pet.).

Next, Cappiello mistakenly asserts that the Humphries transaction was completed in a satisfactory manner. Yet, Humphries testified that she paid for a custom paint job, Cappiello's supervision of the subcontractors at the job site, and the leveling of her home, but never received those services. Humphries' testimony also demonstrated that Cappiello had changed the company name and was using the name "Russell," possibly to prevent others from learning about negative online reviews. She also recalled her frustration in dealing with the company in attempting to secure the services promised to her. Like Snider, Daniels, and Julie and Mary, Humphries paid for services that she never received. Thus, the trial court properly concluded that this evidence was admissible under Rule 404(b)(2).[8]

> [FN8] Her testimony was also admissible to demonstrate that if Cappiello had the intent to perform the contract with Julie and Mary, he could have hired subcontractors to do so.

With respect to Wyatt, evidence of non-payment demonstrated that Cappiello had not used the fifty-percent initial installment to purchase materials to begin the projects on several jobs. According to Wyatt, because he had never been contacted by Cappiello after Julie and Mary paid him, he must have lied when telling them that the project would commence on certain dates. Under Rule 404(b)(2), the trial court did not err in determining that this evidence was admissible to demonstrate lack of mistake or accident and an intent not to perform the contract.

Last, without any analysis with respect to Rule 404(b)(2), Cappiello merely states that Bobo's internet testimony "was truly a general slander." Yet, the trial court was free to admit this testimony to shed light on whether Julie and Mary's consent was induced by deception, i.e., whether Cappiello had an intent to create a false impression of fact likely to affect customer judgment when distancing himself from prior online reviews by changing the business name and using the name Russell to secure new customers.

We conclude that the trial court did not abuse its discretion in admitting evidence of these extraneous offenses under Rule 404(b)(2). Accordingly, we overrule Cappiello's second point of error.

*Cappiello*, No. 06-17-00110-CR, 2017 WL 5894323, at **8-9; *see also Cappiello*, No. 06-17-00109-CR, 2017 WL 5894319, at *1 (adopting the same reasoning in concluding that the trial court did not abuse its discretion in admitting evidence of extraneous offenses under Rule 404(b)). Because TCCA did not issue opinions in refusing Petitioner's petitions for discretionary review, the Court may "look through" the TCCA's unexplained refusals to the last reasoned state decisions, the Sixth Court of Appeals' decisions. *Ylst*, 501 U.S. at 803-06; *see also Woodfox*, 772 F.3d at 369.

Petitioner asserts that the Sixth Court of Appeals erroneously affirmed the trial court's judgment in admitting extraneous offense evidence because it misconstrued the "rule of admission" in a theft case, Section 31.03(c)(1). (Dkt. # 1, p. 15). As an initial matter, the Sixth Court of Appeals did not decide whether the extraneous offense evidence was admissible under Section 31.03(c)(1), because it determined that it was admissible under Rule 404(b). Thus, the state court's ruling was not based on Section 31.03(c)(1) but on Rule 404(b). As such, Petitioner's arguments regarding the state court's application of Section 31.03(c)(1) are irrelevant. Furthermore, in this § 2254 proceeding, as discussed above, only evidence admitted in violation of constitutional principles will implicate a state court conviction. Whether admission of extraneous evidence was admissible under the Texas Rules of Evidence is not relevant here. An extraneous offense may be admitted into evidence without violating the Due Process Clause if the government makes a strong showing that the defendant committed the offense and if the extraneous offense is rationally connected with the offense charged. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007); *Enriquez v. Procunier*, 752 F.2d 111, 114-15 (5th Cir. 1984).

The Court has little difficulty in finding that these elements have been satisfied. The circumstances of the extraneous evidence are rationally connected with the underlying offenses here. Admission of the extraneous offense evidence did not violate due process. The determination

by the state court that the extraneous offense evidence was admissible is not contrary to, and did not involve an unreasonable application of, clearly established federal law. Petitioner has not shown that the state court's determination was either factually or legally unreasonable, and he is therefore not entitled to federal habeas relief. Claims Four and Five should be denied.

### D.    Ineffective Assistance of Trial Counsel (Claim Ten)

Petitioner raises numerous claims of ineffective assistance of trial counsel. A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687. Under the first prong, he must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

Reviewing Petitioner's ineffective-assistance-of-counsel claim through the lens of AEDPA, however, means that he has a higher bar to exceed to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1.  Failure to Investigate and Present a Defense (Claims Ten (a), (f), and (r))

In Claims Ten (a), (f), and (r), Petitioner alleges that he was denied effective assistance of counsel because trial counsel failed to investigate and present a defense. (Dkt. # 1, pp. 21-23, 27).

The Director correctly observes that the Sixth Amendment requires counsel "to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691); *see Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985); *Martin v. Maggio*, 711 F.2d 1273, 1280 (5th Cir. 1983).

With respect to counsel's duty to investigate, the Supreme Court has observed:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91; *see Bell v. Lynaugh*, 828 F.2d 1085, 1088 (5th Cir. 1987); *Lowenfield v. Phelps*, 817 F.2d 285, 290 (5th Cir. 1987).

The reasonableness of an attorney's investigation must be determined by considering not only the evidence already known to counsel, but also whether such evidence would lead a reasonable attorney to investigate further. *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). The reasonableness of an investigation depends in large part on the information supplied by the defendant. *See Ransom*, 126 F.3d at 123; *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989); *Mattheson v. King*, 751 F.2d 1432, 1440 (5th Cir. 1985) (in denying an ineffective assistance claim based on failure to investigate and pursue insanity defense, the court noted the defendant's failure to tell counsel that he either was presently insane or so intoxicated at the time of offense as to be incapable of forming requisite intent). At a minimum, counsel should interview potential witnesses and independently investigate the facts and circumstances of the case. *Bryant v. Scott*, 28 F.3d

1411, 1415 (5th Cir. 1994). Nevertheless, "[d]efense counsel is not required 'to investigate everyone whose name happens to be mentioned by the defendant.'" *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (quoting *United States v. Cockrell*, 720 F.2d 1423, 1428 (5th Cir. 1983)).

In analyzing Petitioner's ineffective assistance of counsel claims, the Court observes that "[t]o establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

Petitioner asserts that trial counsel was ineffective because he failed to present the contract as a defense; failed to personally investigate because he did not interview the State's witnesses and did not visit the house to see if construction was ongoing; and failed to educate the jury and negate one or more elements of the offense. (Dkt. # 1, pp. 21-23, 27). The record reflects that the contract was in fact entered into evidence (Dkt. # 40-5, p. 195; Dkt. # 40-10, pp. 15-18 (State's Exhibit 12)); that trial counsel thoroughly cross-examined every State's witness except one—Petitioner's ex-wife (Dkt. # 40-5, pp. 82-90, 99, 112-17, 149-56, 181-89, 217-23, 227-32; Dkt. # 40-6, pp. 18-21, 34-40, 58-63); and that trial counsel argued Petitioner's defense during opening and closing— namely, that Petitioner never intended to deceive the Dosses but simply could not complete the work due to his confinement and health issues, and that he never intended to deceive others by using the name Russell (Dkt. # 40-5, pp. 50-53; Dkt. # 40-6, pp. 113-21). The record reflects that trial counsel was familiar with all the evidence and witnesses in the case and that his performance was the product of reasoned trial strategy. Petitioner fails to explain what evidence would have

been uncovered had counsel further investigated and how any evidence discovered would change the outcome of the trial.

In his reply, Petitioner argues that trial counsel was also ineffective for failing to interview "clients with completed projects." (Dkt. # 43, p. 16). Petitioner opines that "[t]hese witnesses and these projects would have shown the [Dosses'] project being completed in conformity with the way [other clients' projects] [were] being completed." (Dkt. # 43, p. 16). Petitioner's allegations are conclusory and speculative and are insufficient to entitle him to relief. *See Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799. Moreover, Petitioner fails to show how this evidence would have changed the outcome of the trial. The jury heard testimony that Petitioner completed a different construction project, yet the jury still found Petitioner guilty of theft. It is unclear how any additional evidence that Petitioner completed other construction projects would have altered the jury's verdicts. Nor does Petitioner demonstrate how further explanation of the contract would have changed the jury's verdicts; the contract was admitted into evidence and the jury was able to review it. Petitioner also fails to demonstrate how trial counsel visiting the house several years after the work was supposed to have been performed would have shown that Petitioner started construction on the house and would have altered the outcome of the trial. As the Sixth Court of Appeals noted on direct appeal, Petitioner's intent was an issue for the jury to resolve and there was sufficient evidence from which the jury could have concluded, beyond a reasonable doubt, that Petitioner's "promise to perform was merely a ruse to accomplish theft by deception." *Cappiello*, No. 06-17-00110-CR, 2017 WL 5894323, at *8. Therefore, these claims lack merit.

Moreover, Petitioner fails to demonstrate that the TCCA's denial of Claims Ten (a), (f), and (r) was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. *Williams*, 529 U.S. at 402-03. In sum, he

fails to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Claims Ten (a), (f), and (r) should be denied.

### 2. Failure to File Motions and Object (Claims Ten (b)-(e), (g)-(i), (n)-(q), (s)-(t))

Petitioner next asserts that he was denied effective assistance of counsel because trial counsel failed to file motions and lodge objections. (Dkt. # 1, pp. 21-28).

Generally speaking, a failure to object or to file a motion, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something or file a particular pretrial motion, the courts grant significant deference, as such actions fall "squarely within the ambit of trial strategy." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam). The Fifth Circuit "has made clear that counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Indeed, "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

Petitioner asserts that trial counsel was ineffective for failing to file a motion to suppress extraneous offense evidence and to prepare for the hearing on the admissibility of the extraneous offense evidence. (Dkt. # 1, p. 21). Failing to file a suppression motion is not per se ineffective assistance of counsel. *Kimmelman v. Morrison*, 477U.S. 365, 384 (1986). A determination of ineffectiveness "depends on whether either a suppression motion or an objection would have been granted or sustained had it been made." *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987). Additionally, the defendant must show counsel's inaction amounts to deficient representation and actually prejudiced the defense. *Strickland*, 466 U.S. at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Actual prejudice in the context of an unfiled suppression

motion requires a meritorious Fourth Amendment violation and "a reasonable probability that the verdict would have been different" absent the excludable evidence. *Kimmelman*, 477 U.S. at 375. Because the extraneous offense evidence was not obtained as a result of a search or in violation of Petitioner's Fourth Amendment rights, trial counsel's decision not to file a motion to suppress was reasonable trial strategy. Furthermore, as previously discussed, the Sixth Court of Appeals rejected Petitioner's claim on direct appeal that the trial court erred in admitting evidence of extraneous offenses to demonstrate Petitioner's intent to commit theft. *See Cappiello*, No. 06-17-00110-CR, 2017 WL 5894323, at **8-9; *Cappiello*, No. 06-17-00109-CR, 2017 WL 5894319, at *1. Petitioner has not explained how a motion to suppress—even assuming that such a motion would have been an appropriate—would have had a reasonable probability of success, considering that his argument about the inadmissibility of the extraneous evidence was rejected by both the trial court and the Sixth Court of Appeals. Likewise, Petitioner fails to demonstrate that he suffered any prejudice from trial counsel's decision not to reurge his objections to the admittance of the extraneous offenses at trial.

The Court notes that trial counsel filed a motion in limine (Dkt. # 40-19, pp. 50-52), seeking to exclude evidence of extraneous offenses:

I.

That the State of Texas not be permitted to mention, make reference or allude to any specific instances of conduct or specific acts on the part of the Defendant, Chad Allen Cappiello, other than those currently before the Court and the subject of this trial for the reason that to do so would be a violation of the Texas Rules of Criminal Evidence and would be calculated only to inflame or bias the jury.

. . . .

IV.

> That the State of Texas not be permitted to mention or make reference to the fact that the Defendant has been charged or indicted with any other offense other than the charge at issue in this trial.

(Dkt. # 40-19, pp. 50-51). Thus, the record demonstrates that trial counsel diligently sought to exclude the extraneous offense evidence. Additionally, Petitioner's claim that trial counsel was not properly prepared for the hearing on the admissibility of the extraneous evidence is purely conclusory and belied by the record. (Dkt. # 40-3). Trial counsel competently argued against the admission of the extraneous evidence at the hearing. (*See generally* Dkt. # 40-3). The fact that trial counsel's arguments were unsuccessful does not render his assistance constitutionally ineffective. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Next, the Court is not aware of any rule or law requiring that notices of pretrial hearings be given a certain number of days before the hearing or requiring pretrial hearings to be held a certain number of days before trial. (*See* Dkt. # 1, p. 22). Nor has Petitioner shown that, but for counsel's failure to object, the jury's verdict would have been different. Thus, Petitioner fails to demonstrate that not objecting to the timing of the notice of the pretrial hearing and the timing of the pretrial hearing was deficient performance or that he suffered any prejudice.

Petitioner also argues that trial counsel was ineffective for failing to object to the jury charge which did not require the jury to be unanimous on the element of deception, and to require a unanimous jury verdict on the element of deception. (Dkt. # 1, pp. 22, 28). Under the Texas Constitution and Texas Code of Criminal Procedure, a jury's verdict must be unanimous in all felony cases. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006); *accord* Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a)." A jury must unanimously convict a defendant of a single, specific offense, but it need not unanimously agree as to any particular theory

of how the defendant committed that offense." *Magana v. State*, 351 S.W.3d 501, 504 (Tex. App. 2011) (citing *Stuhler v. State*, 218 S.W.3d 706, 716–19 (Tex. Crim. App. 2007); *Jefferson*, 189 S.W.3d at 312; *Sanchez v. State*, 182 S.W.3d 34, 63 (Tex. App. 2005), *aff'd*, 209 S.W.3d 117 (Tex. Crim. App. 2006)). Contrary to Petitioner's contention, the jury instructions correctly stated that the jury did "not have to agree on the method of deception listed in elements 2.a, 2.b., or 2.c. above." (Dkt. # 40-23, p. 67). Because Texas law does not require the jury to unanimously agree as to the method Petitioner used to deceive the Dosses, Petitioner cannot demonstrate deficient performance or prejudice based on trial counsel's decision not to object to the jury instruction or to press for unanimity on the method of deception.

Petitioner also fails to demonstrate that trial counsel was ineffective for failing to object to improper jury argument. Under Texas law, proper jury argument falls into one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument by opposing counsel and (4) a plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). Petitioner asserts that trial counsel was ineffective for failing to object to the prosecution's argument that Petitioner went by an alias or a different or "wrong" name. (Dkt. # 1, p. 25; Dkt. # 40-6, pp. 105-06). The jury heard evidence that Petitioner used two different names, and that he started using the last name Russell instead of Cappiello after receiving several negative reviews online. Thus, the prosecutor's argument that Petitioner used a different or "wrong" name was a reasonable inference based on the evidence introduced at trial. Trial counsel's failure to object was not unreasonable trial strategy. *See United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008) ("A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence."). Furthermore, the prosecutor's statement that Petitioner used a "wrong" name was

not so inflammatory that it rendered the trial fundamentally unfair. Even if the failure to object could be classified as deficient performance, Petitioner has shown no prejudice from the lack of objection. He has not demonstrated that, but for this alleged deficiency of counsel, a reasonable probability existed that the outcome of the trial would have different. Finally, any possible harm from the prosecutor's argument was cured by the trial court's instruction to the jury that statements by counsel do not constitute evidence. (Dkt. # 40-23, p. 63).

Petitioner contends that trial counsel was ineffective for failing to object to additional improper jury argument. (Dkt. # 1, pp. 27-28). Petitioner alleges that the prosecutor made "inflammatory remarks appealing to law [and] order (arguing a signal must be sent)," improperly gave his opinion as to the weight of the evidence and guilt of Petitioner, improperly argued that the elements of the offense had been met, and improperly engaged in "personal [and] character assaults in order to characterize Petitioner." (Dkt. # 1, pp. 27-28; Dkt. # 40-6, pp. 101-13; 121-27). The comments cited by Petitioner were not improper and fell within the categories of permissible argument under Texas law. *See Freeman*, 340 S.W.3d at 727. The prosecutor's characterization of Petitioner as a "liar," "manipulator," and "crook," although colorful and arguably hyperbolic, was based on deductions from the evidence that Petitioner deceived the Dosses. But even if improper, the characterization was not so inflammatory that it rendered the trial fundamentally unfair. Furthermore, even if the failure to object could be classified as deficient performance, Petitioner has shown no prejudice from the lack of objection to these statements. He has not demonstrated that, but for this alleged deficiency of counsel, a reasonable probability existed that the outcome of the trial would have different. Finally, any possible harm from the prosecutor's argument was cured by the trial court's instruction to the jury that statements by counsel do not constitute evidence. (Dkt. # 40-23, p. 63). This ground for review is therefore without merit.

Petitioner further argues that trial counsel was ineffective for failing to object, based on *Brady v. Maryland*, 373 U.S. 83 (1963), to the State withholding evidence during trial regarding his creation of businesses and his attempts to contact the Dosses to complete the project. (Dkt. # 1, p. 26; Dkt. # 43 p. 19). To state a *Brady* claim, a defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable, (3) the evidence was material to either guilt or punishment, and (4) discovery of the allegedly favorable evidence was not the result of a lack of due diligence. *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997); *see also Blackmon v. Scott*, 22 F.3d 560, 564 (5th Cir. 1994), *cert. denied*, 513 U.S. 1060 (1994). "The State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence." *Rector*, 120 F.3d at 558-59. The evidence Petitioner claims was withheld by the State was either evidence known to the defense, in Petitioner's possession, readily discoverable by the defense, or presented at trial. Thus, any *Brady* objection would not have been successful. Petitioner cannot demonstrate deficient performance or prejudice based on trial counsel's decision not to assert a *Brady* objection.

Petitioner also alleges that trial counsel was ineffective for failing to object to perjured testimony from the Dosses, Wyatt, and Bobo. (Dkt. # 1, p. 27). However, the testimony that Petitioner takes issue with (*see* Dkt. # 1, p. 6) concerns contradictory or inconsistent testimony. Contradictory testimony from witnesses, inconsistencies within a witness' testimony, and conflicts between reports, written statements and the trial testimony of prosecution witnesses do not, standing alone, establish perjury. *See Koch*, 907 F.2d at 531 (holding that contradictory testimony from witnesses or inconsistencies in a witness' testimony at trial are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjured); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989) (holding that the omission of certain facts from the

reports and written statements of the prosecution's witnesses, alone, is not adequate to put the prosecution on notice of perjury on their part, much less establish such perjury in fact occurred); *United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987) (holding that inconsistencies between pre-trial and in-trial testimony do not, standing alone establish perjury or put the prosecution on notice of possible perjury). Thus, Petitioner cannot demonstrate deficient performance or prejudice based on trial counsel's failure to object to the testimony.

Petitioner makes only conclusory, unsubstantiated allegations that trial counsel was ineffective for failing to file a motion for change of venue based on (1) the terms of the contract, (2) complainant's relationship (neighbors) with the Hopkins County Commissioner, (3) complainant's civil attorney's "family relationship" with the Hopkins County Sheriff, and (4) "the local Sheriff's relationship (business partners) [with] the jury foreman." (Dkt. # 1, p. 23). Petitioner cites no legal authority to support his argument and fails to demonstrate that a motion to change venue would have been granted. "Venue refers to the county or counties in which the State is permitted to file and prosecute criminal charges." *See Parish v. State*, No. 12-11-00141-CR, 2012 WL 1883725, at *1 (Tex. App. May 23, 2012) (citing 40 George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 5:1 (3d ed. 2011)). Generally, venue is proper in the county in which the offense was committed—here, Hopkings County. *See* Tex. Code Crim. Proc. Ann. art. 13.18. The venue where criminal charges are filed are not dictated by the terms of a contract. Additionally, none of the relationships identified by Petitioner would be grounds for a change of venue. "If it is improbable that a fair and impartial trial can be given to the defendant, the court may not refuse the motion." *Harvey v. State*, 887 S.W.2d 174, 175-76 (Tex. App. 1994) (citation omitted). Petitioner fails to show that it was improbable that a fair and

impartial trial could be given based on the relationships he identifies above. Trial counsel's failure to file a meritless motion for change of venue was not ineffective assistance of counsel.

Petitioner also makes conclusory, unsubstantiated allegations that trial counsel was ineffective for failing to obtain rulings on pretrial motions filed on April 13, 2017. (Dkt. # 1, p. 23). The record reflects that, on April 13, 2017, trial counsel filed a Motion for Discovery, Motion in Limine, Motion for Discovery of Exculpatory and Mitigating Evidence, Motion for Production of Witness Statements and Writings Used to Refresh Recollection of Witnesses, Motion to Have the Court Reporter Make a Full Record, and a Motion for Discovery of State's Witness List, and requested a hearing on those motions. (Dkt. # 40-19, pp. 40-52). Petitioner fails to provide any analysis of the motions or how the failure to obtain a ruling caused him any prejudice, to the extent any of the motions were not in fact ruled on or resolved.[5] This conclusory claim is insufficient to entitle Petitioner to relief and should be denied. *See Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799.

Petitioner next claims that trial counsel was ineffective for failing to object to Wyatt testifying as an "expert," in violation of the trial court's pretrial ruling. (Dkt. # 1, pp. 25-26). At the pretrial hearing, the prosecutor stated that he did not intend to call Wyatt as an expert witness but as "a fact witness who has dealt with this particular defendant, in a previous job," and who "can talk about the things that stood out to him as a cabinetmaker, that were unusual and suspicious." (Dkt. # 40-3, p. 21). The trial court overruled trial counsel's objection to allowing Wyatt to testify, ruling that Wyatt could testify as a fact witness "as the State has stated their intentions." (Dkt. # 40-3, p. 21). As set forth above, Wyatt testified at trial as follows:

---

[5] The motion in limine and discovery issues were addressed in the pretrial hearing. (Dkt. # 40-3; *see also* Dkt. # 40-4, pp. 8-12).

> Wyatt testified that he met Cappiello when working together on a small project in Tyler, Texas, which was actually completed. After he was paid for the Tyler project, Wyatt agreed to take on four other projects for Cappiello, finished his portion of the work, asked for payment several times, but was never paid. According to Wyatt, Cappiello used the completed Tyler project as an exposition to build trust with him and with other victims, who toured the project site prior to hiring Cappiello to work on their homes. In hindsight, Wyatt testified that Cappiello's appearance and demeanor should have raised a red flag because, instead of "show[ing] up with tape measures, [and a] truck" to contracting jobs, Cappiello always arrived in a nice Cadillac SUV while wearing a three-piece suit, and seemed to only have vague knowledge for a contractor. Wyatt also said that Cappiello went only by Chad Russell and never revealed that Kristi was his wife.

*Cappiello*, No. 06-17-00110-CR, 2017 WL 5894323, at *3. Wyatt's testimony was based on personal knowledge, experience, and perception and did not cross the line between lay witness testimony to expert testimony. Any objection on this basis would have been without merit. Trial counsel did not render ineffective assistance by failing to make a meritless objection. This claim should therefore be denied.

Petitioner also asserts that trial counsel was ineffective for failing to object to Peterson testifying about an internet posting he made over five years before trial as an employee terminated from one of Petitioner's prior businesses. (Dkt. # 1, p. 26). Petitioner states that Peterson was to testify as an "[identifying] witness only." (Dkt. # 1, p. 26). As set forth above, Peterson testified at trial as follows:

> Nash Peterson testified that he had known Cappiello since childhood and that Cappiello had never used the name Russell. Peterson worked for Cappiello in 2012 when he was doing business as Southland Exteriors. He testified, "I had sold jobs that were not done, and it seemed that they were dragging on. . . . [M]y bills were stacking up and I wasn't getting paid. . . . [S]o I just quit." Peterson testified that he became aware that the Cappiellos were receiving a lot of negative reviews online that could be located by typing "Cappiello" into an internet search toolbar. Peterson had replied to one of the reviews by attempting to clear his name so as not to be held responsible by those that had been "defrauded."

*Cappiello*, No. 06-17-00110-CR, 2017 WL 5894323, at *3. Other than Petitioner's unsupported and conclusory allegations that counsel should have objected, Petitioner has not shown that there

was a factual or legal basis to support a challenge by trial counsel. Petitioner's conclusory allegation is insufficient to entitle Petitioner to relief. *See Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799. Moreover, Petitioner fails to show that but for trial counsel's alleged error, the result of the proceeding would have been different. This claim should therefore be denied.

Finally, Petitioner fails to demonstrate that the TCCA's denial of Claims Ten (b)-(e), (g)-(i), (n)-(q), (s)-(t) was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. *Williams*, 529 U.S. at 402-03. In sum, he fails to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Claims Ten (b)-(e), (g)-(i), (n)-(q), (s)-(t) should be denied.

### 3. Jury Selection (Claims Ten (j)-(m))

Petitioner further contends that he was denied effective assistance of counsel because trial counsel failed to raise a *Batson* challenge, failed to request additional peremptory strikes, failed to strike jurors for cause based on their relationship with authorities, and failed to preserve the record by objecting to missing jurors on the panel sheet. (Dkt. # 1, pp. 23-25).

An attorney's actions during voir dire are considered to be a matter of trial strategy. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be "so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (citation omitted). The Court is persuaded that none of the jury selection decisions by trial counsel falls outside the range of acceptable judgment. As the Fifth Circuit Court of Appeals has stated:

> The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts. Indeed, we recognize this cold fact of life by our standard for reviewing the rulings of judges presiding over jury selection. The Supreme Court in *Wainwright v. Witt*, 469 U.S. 412, 105 S. Ct. 844, 83 L.Ed.2d 841 (1985), pulled back from earlier language in

> *Witherspoon* suggesting a de novo review of such decisions, requiring that federal habeas courts review by a clearly erroneous standard. The point is not that we review claims of ineffectiveness by a similar standard but rather that the standard by which we review decisions by trial judges accepts the reality that the selection process is more an art than a science, and more about people than about rules. While our review of the ultimate decision regarding effectiveness of counsel is essentially de novo, our willingness to second guess them must be informed by the reality of their task and the limits of the recording of their work before us.

*Romero v. Lynaugh*, 884 F.2d 871, 878-79 (5th Cir. 1989).

Although Petitioner cites *Batson*, his claim appears to be that trial counsel failed to challenge the racial composition of the jury venire. (Dkt. # 1, p. 23). Petitioner states that "only (2) of more than (71) venire in array [were] black showing also insufficient cross section of population."[6] (Dkt. # 1, p. 23). Petitioner has failed to present any evidence that there was a systematic exclusion of blacks from the jury venire. Trial counsel was not ineffective for failing to make a meritless objection. *Clark*, 19 F.3d at 966. Additionally, Petitioner cannot demonstrate deficient performance or prejudice based on trial counsel's handling of jury selection. Trial counsel conducted a thorough voir dire examination and requested jurors to be struck. (Dkt. # 40-4, pp. 189-96). Trial counsel's request to strike one juror for cause based on his relationship with law enforcement was granted; however, the trial court refused to strike another juror for cause based on her relationship with law enforcement. (Dkt. # 40-4, pp. 190, 195). Trial counsel also requested that the additional seventeen jurors be struck for cause because they were not "sufficiently rehabilitated when they said they could not follow the instructions of the Court." (Dkt. # 40-4, p. 196). The court denied the request. (Dkt. # 40-4, p. 196). A review of the voir dire reflects that jurors were questioned about their relationship with law enforcement and, as the trial court found, they "indicated that they could follow the law" after the court and attorneys "adequately expressed

---

[6] The Court notes that Petitioner is white. *See* https://inmate.tdcj.texas.gov/InmateSearch/search.action.

and explained what the law was." (Dkt. # 40-4, p. 195). Petitioner fails to demonstrate that trial counsel's decision not to exercise peremptory challenges was constitutionally substandard, nor does he substantiate his allegation that the jury ultimately selected was not impartial. There is no indication in the voir dire that jurors selected were unacceptable because they were unable to follow the law or were prejudiced against Petitioner. The record is simply insufficient to overcome the presumption that trial counsel's decision not to use peremptory challenges with respect to certain jurors was strategic. Petitioner also fails to substantiate his claim that trial counsel was ineffective for allegedly failing to preserve the record by objecting to missing jurors on the panel sheet. Because Petitioner fails to satisfy either of the *Strickland* prongs with respect to his ineffective assistance of counsel claims regarding trial counsel's handling of jury selection, the claims are without merit.

Moreover, Petitioner fails to demonstrate that the TCCA's denial of Claims Ten (j)-(m) was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. *Williams*, 529 U.S. at 402-03. In sum, he fails to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Claims Ten (j)-(m) should be denied.

**E.     Ineffective Assistance of Appellate Counsel (Claim Eleven)**

In Claim Eleven, Petitioner raises several claims of ineffective assistance of appellate counsel.

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The standard set out in *Strickland* to prove that counsel rendered unconstitutionally ineffective assistance applies to both trial and appellate

attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). Thus, to obtain relief, a petitioner claiming ineffective assistance of appellate counsel must show deficient performance and prejudice. *Smith,* 528 U.S. at 285. To establish that appellate counsel's performance was deficient, the defendant must show that counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Id.* The defendant must also establish prejudice by demonstrating a "reasonable probability" that, but for counsel's deficient performance, "he would have prevailed on his appeal." *Id.* As the Fifth Circuit Court of Appeals explained:

> Appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Dorsey*, 720 F.3d at 320 (internal citation and quotation marks omitted). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Effective advocates "'winnow[ ] out weaker arguments on appeal'" and focus on key issues.

*Higgins v. Cain*, 720 F.3d 255, 265 n.41 (5th Cir. 2015) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

Petitioner argues that appellate counsel was ineffective because he failed to argue that Petitioner was convicted of two crimes arising from the same transaction; that the extraneous offense evidence was improperly admitted because it was too remote; that Petitioner was convicted by an unconstitutionally selected petit jury; that the contract was not upheld; that the conviction was based on perjured testimony; that the jury charge was erroneous; and that prosecutor engaged in misconduct. (Dkt. # 1, pp. 28-30).

Petitioner fails to show that appellate counsel was objectively unreasonable in not raising these issues on appeal. Nor has Petitioner demonstrated that had appellate counsel raised these issues, Petitioner would have prevailed on appeal. First, Petitioner was charged with two separate

crimes of theft based on illegally procuring two checks in two separate transactions from the Dosses. Thus, any argument that Petitioner was improperly convicted of two crimes arising from the same transaction would not have been successful on appeal. Second, as discussed above, the Sixth Court of Appeals concluded that the extraneous offense evidence was properly admitted. Appellate counsel argued that some of the extraneous offense evidence was too old, and the appellate court resolved the argument as follows:

> With respect to the Snider and Daniels transactions, although the term "recent" is not defined in Section 31.03(c)(1), Texas courts have held that events occurring a little more than two years prior to the offense in question fall within the category of recent events, whereas events occurring six years prior to the offense cannot be considered recent. *Cf. Benson v. State*, 240 S.W.3d 478, 484 (Tex. App.–Eastland 2007, pet. ref'd) *with Ballard v. State*, 945 S.W.2d 902, 905 (Tex. App.–Beaumont 1997, no pet.). Here, Cappiello took Snider's and Daniels' money deposits in January 2013 and Mary and Julie's money in May 2015. No bright line temporal rule has been set with respect to what constitutes a recent period under Section 31.03(c)(1). However, we need not decide whether the Snider and Daniels transactions qualify as evidence admissible under Section 31.03(c)(1), because even if they do not, such evidence was admissible under Rule 404(b) to demonstrate Cappiello's modus operandi, intent, and lack of mistake or accident. *See Lopez*, 316 S.W.3d at 678; *Hegar v. State*, 11 S.W.3d 290 (Tex. App.–Houston [1st Dist.] 1999, no pet.).

*Cappiello*, No. 06-17-00110-CR, 2017 WL 5894323, at *9. In light of this ruling, any additional argument that other extraneous evidence was too remote to be admissible, likely would have been rejected on the same basis. Thus, Petitioner fails to demonstrate that had appellate counsel raised the issue, he would have prevailed on appeal.

Third, as previously discussed, Petitioner has failed to demonstrate that the jury was unconstitutionally selected or that the jury ultimately selected was not impartial. As such, any argument that Petitioner was convicted by an unconstitutionally selected petit jury would not have been successful on appeal. Fourth, Petitioner baldly asserts that appellate counsel was ineffective for "failing to appeal to terms of contract not being upheld." (Dkt. # 1, p. 29). He then identifies

the following issues that appellate counsel should have raised: (1) "Petitioner's right to retain funds" under the contract; (2) "requiring payment in full to proceed due to breach by complainant"; and (3) "agreed venue [and] entering of any judgments being Dallas County, Texas not Hopkins County, Texas." Breach of contract is not a defense to the crime of theft, and any argument to that effect would have been without merit. Furthermore, the Sixth Court of Appeals thoroughly discussed the law regarding theft in connection with a contract and determined that a rational juror could have determined that Petitioner had no intention of fulfilling his obligation under the agreement. It is unclear how the venue clause has any bearing on Petitioner's conviction. Thus, there is no reasonable probability that, but for counsel's failure to raise these arguments, Petitioner would have prevailed on his appeal. Finally, and as previously discussed in connection with Petitioner's ineffective assistance of trial counsel claims, inconsistent statements do not arise to the level of perjury, a jury need not unanimously agree as to any particular theory of how a defendant committed an offense, and the prosecutor did not commit misconduct. Therefore, Petitioner fails to demonstrate that appellate counsel's decision not to raise these issues on appeal was unreasonable strategy and prejudiced his appeal.

Moreover, Petitioner fails to demonstrate that the TCCA's denial of Claim Eleven was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. *Williams*, 529 U.S. at 402-03. In sum, he fails to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Claim Eleven should be denied.

## V.  CONCLUSION

Petitioner's Claims Six, Nine, Thirteen, and Fourteen are unexhausted and procedurally barred from federal habeas corpus review. Petitioner's remaining claims are without merit.

Petitioner fails to show that the evidence was insufficient to support his theft convictions. He also

fails to show that he is entitled to relief based on the admission of extraneous offense evidence.

Additionally, Petitioner fails to show that trial counsel and appellate were ineffective. Above all,

Petitioner fails to show that the state court proceedings resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States, or resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding. In sum,

Petitioner fails to show there was no reasonable basis for the state courts to deny relief.

Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding

under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28

U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully

recommended that the Court, nonetheless, address whether Petitioner would be entitled to a

certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding

that a district court may *sua sponte* rule on a certificate of appealability because "the district court

that denies a petitioner relief is in the best position to determine whether the petitioner has made a

substantial showing of a denial of a constitutional right on the issues before that court," noting that

"[f]urther briefing and argument on the very issues the court has just ruled on would be

repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing

of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained

the requirement associated with a substantial showing of the denial of a constitutional right in

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El*, 537 U.S. at 336-37 (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.

An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 15th day of June, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE